Cite as 2025 Ark. App. 264

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-22-779

| | |
|---|---|
| MICHAEL ALLWINE AND SOPHIE ALLWINE | Opinion Delivered April 30, 2025 |
| APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION |
| V. | [NO. 60CV-21-413] |
| FCA US, LLC; 4X4 OFFROAD OUTFITTERS, LLC; JKS MANUFACTURING, INC.; MEYER DISTRIBUTING, INC.; AND FLETCHER AUTOMOTIVE NO. 1, LLC, D/B/A FRANK FLETCHER DODGE AND FRANK FLETCHER DODGE-CHRYSLER-JEEP | HONORABLE MORGAN E. WELCH, JUDGE |
| APPELLEES | AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

This appeal arises out of a Jeep rollover accident. The primary issue in this case is whether Zachary Walker, Sophie and Michael Allwines' expert witness, was qualified to offer certain opinions regarding the cause of the accident. The circuit court concluded Walker was not, which in turn led it to grant summary judgment to all defendants since liability could not be established. The Allwines challenge both the order granting the partial exclusion of Walker's expert testimony and the order for summary judgment. We affirm.

## I. *Statement of Facts*

In May 2018, Sophie Allwine was involved in a wreck while driving a Jeep Wrangler her father Michael Allwine had purchased for her. While Sophie was traveling on Interstate 440 in Pulaski County, a steel beam came off a tractor-trailer truck ahead of her. Another car driving in front of Sophie's hit the steel beam and drove over it before the beam struck the Jeep. Sophie lost control of the Jeep and hit a concrete center divider causing it to roll over. Sophie was ejected from the vehicle. Sophie sustained severe injuries, and the Jeep was destroyed.

The Allwines sued several parties connected to the Jeep's manufacture and sale and its aftermarket accessories.[1] Michael Allwine bought the Jeep Wrangler, which was manufactured by appellee FCA US, LLC (FCA), from appellee Fletcher Automotive No. 1, LLC d/b/a Frank Fletcher Dodge and Frank Fletcher Dodge-Chrysler-Jeep (Fletcher). Immediately after the purchase, the Allwines arranged for the Jeep to be taken to appellee 4x4 Offroad Outfitters (4x4) for the installation of a lift kit and other aftermarket accessories, including larger wheels and tires. 4x4 operates on Fletcher's premises and holds itself out as Fletcher's "in house lift and accessory experts." The lift kit was manufactured by appellee JKS Manufacturing, Inc. (JKS), and distributed by Meyer Distributing Partners, LLC/Meyer Distributing, Inc. (collectively Meyer). During installation, 4x4 removed the Jeep's original

---

[1]The owner of the tractor-trailer truck was never identified.

lower control arms, which hold the front axle to the Jeep, and replaced them with heavier lower control arms.

The Allwines sued FCA, 4x4, Fletcher, JKS, Meyer, and several John Doe defendants. They alleged that the defendants negligently designed, fabricated, assembled, manufactured, labeled, sold, delivered, or supplied the Jeep and the aftermarket lift kit and that their negligence proximately caused Sophie's injuries and the damage to the Jeep. The Allwines claimed that by attaching the aftermarket and more robust lower control arms to the original Jeep brackets, the connection became mis-engineered and resulted in an unreasonably dangerous and defective condition. They further asserted that MiniSkids, which are also sold by JKS for only $25, should have been installed to protect the lower control arm connection.

During discovery, one expert witness—Zachary Walker—was identified by the Allwines to establish liability. Walker is a welder by trade, and he was retained to provide expert testimony in the fields of fabrication, welding, metallurgy related to welds and markings, and the installation of lift kits. Walker's qualifications as an expert in this case are the crux of this appeal.

As part of his engagement, Walker inspected the vehicle; reviewed photos from the accident scene; read the police report; read JKS product descriptions; examined new Jeep lower control arms, new JKS lower control arms, and new JKS MiniSkids; and reviewed depositions.

A letter prepared by the Allwines' attorneys outlined Walker's anticipated opinions and qualifications to be provided at his deposition:

1. The JKS Manufacturing, Inc. Mini-Skid Plate (which was available for sale and installation on the Allwine Jeep per JKS testimony) would have afforded and provided some protection in this case to deflect and protect against the road debris/steel beam.
2. The JKS Manufacturing, Inc. MiniSkid Plate is a critical device for the vehicle.
3. The application and installation of this JKS Manufacturing, Inc. MiniSkid Plate would have created a "boxed-in" structure that would have strengthened the lower control arm bracket assembly, provided greater strength, and provided some protection and deflection characteristics.
4. His experience in building off-shore racing boats and in a local fabrication and kit-installation facility for large garbage trucks driven on the highways (the garbage truck would arrive at the facility as a bare-chassis, and the company would install the kit resulting in a completed garbage truck to be used on the highways and streets).
5. His experience in machining airplane parts, advanced welding, current fabrication and welding on aerospace vehicles, plus his experience in building off-shore racing boats and large garbage trucks.

During Walker's deposition, Walker theorized that the steel beam struck the Jeep's lower control arm, damaged it, and caused the accident.[2] He further opined that when the lift kit was installed, a MiniSkid plate, which could have been installed on the brackets of the Jeep's lower control arm, should have also been installed; that it would have made the bracket more "robust"; and that the failure to do so was negligent. Despite this, Walker admitted he had done no testing to support his theory. He also admitted he had no accident-reconstruction experience and had not attempted to reconstruct the accident, that he had no engineering experience, and that he had never used a police report before his engagement

_____

[2]Walker's theory conflicts with the police report, which indicates that the steel beam struck the Jeep's windshield.

4

as a potential expert in this case. With respect to the failure to install the MiniSkid, Walker testified that its installation would have provided more protection against road debris like the steel beam because of its better and more robust design but that he could not say whether its installation would have prevented the accident.

After Walker's deposition, the appellees each filed motions to exclude his testimony. They also filed motions for summary judgment, contending that if the circuit court determined that Walker's expert testimony should be excluded, the Allwines could not establish liability.

The circuit court conducted a hearing on these motions. At the conclusion, the circuit court announced from the bench that it was partially granting the motions to exclude Walker's expert testimony, deciding that he was qualified as an expert only in the areas of welding, metallurgy, and the fabrication of lift kits but that he was not qualified to give expert opinions in the areas of warnings, human factors, engineering, and accident reconstruction. Given the ruling on Walker's qualifications as an expert, the court also granted summary judgment in favor of the appellees finding that the Allwines could not establish liability. The Allwines filed a motion for reconsideration.

The circuit court entered two orders—one partially excluding Walker's expert testimony and granting summary judgment and another denying the motion for reconsideration. The circuit court ruled in part:

> Walker's proffered opinions with respect to engineering, physics, accident reconstruction, human factors, and any area of expertise besides welding, metallurgy related to welds for lift kits, and fabricating or installing lift kits, do not satisfy the

standard for the admissibility of expert testimony as set forth in *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993), and as adopted by the Supreme Court of Arkansas in *Farm Bureau Mut. Ins. Co. of Arkansas v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000).

Consequently, the circuit court granted the motions for summary judgment. It found that the Allwines' claims were beyond the comprehension of most laypersons and required expert testimony and that the Allwines' sole expert could not offer any opinions linking any of the appellees to the accident or to the Allwines' damages. The Allwines appeal and argue that the circuit court abused its discretion in partially excluding the expert testimony of Zachary Walker and that the circuit court erred in granting summary judgment.

II. *Zachary Walker's Expert Testimony*

Arkansas Rule of Evidence 702 governs expert testimony and provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." A circuit court must make a preliminary assessment of whether the reasoning or methodology underlying the expert testimony is valid and whether it has been properly applied to the facts of the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Farm Bureau Mut. Ins. Co. of Ark. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000). The admissibility of expert testimony rests largely within the circuit court's broad discretion. *Walden v. State*, 2023 Ark. App. 177, 664 S.W.3d 443. To successfully challenge the circuit

court's partial exclusion of Walker's testimony here, the Allwines must show that the circuit court abused its discretion and that the ruling prejudiced them. *Id.*

The Allwines attack the circuit court's ruling by reiterating Walker's experience and qualifications as a welder. They contend that the court's ruling limiting his expert testimony to welding, metallurgy related to welding, and fabrication of lift kits was overly broad and that it was erroneous to partially exclude his testimony because it all related to his fields of expertise.

We disagree. Walker's deposition made clear that there are limits to his expertise. Walker opined that the installation of a MiniSkid would have made the Jeep's lower control arm more robust, an opinion that is within his area of expertise. However, he also conceded his lack of qualifications to give more specific opinions about how the accident occurred. Walker admitted that he is not an expert in accident reconstruction, engineering, biomechanics, restraints, or vehicle handling and stability. He further admitted he had done no testing to support his theory. Walker admitted that he could not say that the installation of the MiniSkid would have changed the outcome of the collision.

A court commits an abuse of discretion when its discretion is exercised thoughtlessly and without due consideration. *Poff v. Brown*, 374 Ark. 453, 288 S.W.3d 620 (2008). A circuit court has considerable leeway in determining whether particular expert testimony is reliable. *Britt v. State*, 2019 Ark. App. 145, 573 S.W.3d 567. The circuit court's decision to limit Walker's expert testimony does not rise to this high standard. There were clear and significant limits to Walker's expertise. Despite his qualifications in welding, fabrication,

7

and metallurgy, his testimony included attempts to explain why he thought the accident occurred despite his admitted lack of training in accident reconstruction and engineering. An expert may not offer an opinion that ranges too far outside his area of expertise. *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007). Here, Walker could not reliably opine about how the accident occurred or whether anything should have been done differently by any of the appellees. We hold that the circuit court did not abuse its discretion by limiting the subjects on which he could testify.

Moreover, to successfully challenge the exclusion of Walker's testimony, the Allwines must also show that its exclusion prejudiced them. "Harmless error is not ground for reversal." *Com. Energy Users Grp. v. Ark. Pub. Servs. Comm'n*, 369 Ark. 13, 250 S.W.3d 225 (2007). Here, the Allwines' case failed with the exclusion of most of Walker's testimony, and they claim that he, through his testimony, established proximate cause. Once again, we disagree. We cannot conclude that the exclusion of this testimony prejudiced the Allwines. Walker conceded that even though he theorized that the installation of a MiniSkid would have made the Jeep's lower control arms more robust, he could not say whether it would have affected the outcome of the collision. We find no reversible error in the circuit court's order to partially exclude Walker's expert testimony.

III. *Summary Judgment*

The Allwines next challenge the circuit court's order granting summary judgment. The circuit court found that the Allwines' claims were beyond the comprehension of most laypersons and required expert testimony. Because it found that Walker was not qualified

to offer any opinions linking any of the appellees to the accident or to the Allwines' damages, it granted summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Frazier v. Office of Child Support Enf't*, 2021 Ark. App. 65, 618 S.W.3d 415. The reviewing court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Swaffar v. White*, 2024 Ark. App. 417, 697 S.W.3d 726. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* The object of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Frazier*, *supra*.

With these standards in mind, we turn our review to the order granting summary judgment. Walker was deemed qualified to give expert testimony on welding, metallurgy related to welding, and the fabrication of lift kits. Walker opined that by attaching the aftermarket lower control arms to the original Jeep brackets, the connection became mis-engineered and exposed the Jeep to higher risks and that if the MiniSkids had been installed, they would have added more protection. Taking this as true, the question becomes whether Walker's admissible expert testimony is sufficient to link any of the appellees to the Allwines' damages such that summary judgment was improper. It is not. Walker could not give any opinions regarding engineering or accident reconstruction; he admitted he was not an expert in those areas. Additionally, he admitted he could not say whether the installation of the

9

MiniSkid would have prevented the damages sustained by the Allwines. Stated another way, Walker was unqualified, based on both his own admission and the court's ruling on the motion to exclude some of his testimony, to say that but-for the failure to install the MiniSkid, the damages would not have occurred. Thus, there is no evidence to establish causation. We hold that the circuit court did not err in granting summary judgment to each of the appellees.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*David A. Hodge* and *H.L. (Buddy) Slate, Jr.*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr.*, and *Gary D. Marts, Jr.*, for separate appellee FCA US LLC.

*Barber Law Firm PLLC*, by: *Michael Alexander* and *Lauren A. Spencer*, for separate appellee 4x4 Offroad Outfitters, LLC.

*Hall Booth Smith, P.C.*, by: *Todd Wooten* and *Tony A. DiCarlo III*, for separate appellees JKS Manufacturing, Inc., and Meyer Distributing, Inc.

*Davis, Butt, Taylor & Clark, PLC*, by: *Don A. Taylor* and *Constance G. Clark*, for separate appellee Fletcher Automotive No. 1, LLC, d/b/a Frank Fletcher Dodge and Frank Fletcher Dodge-Chrysler-Jeep.

10